## In re FAUNCE.

### Patent Appeal No. 3414.

Court of Customs and Patent Appeals.
Feb. 4, 1935.

Royal R. Rommel, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 10, 18, 21, and 23 to 27, inclusive, in appellant's application for a patent for an alleged invention relating to a medicinal preparation composed of animal bile and glycerine, and a process for making the same.

Claims 10, 21, and 24 are illustrative. They read:

"10. Glyceride of bile consisting of glycerine and bile mixed in substantially equal proportions, the bile having pathogenic matter removed therefrom."

"21. In the process of preparing a remedial product the steps which consist in adding glycerine to bile as a preservative, permitting them to stand for a period of substantially three months until the heavier constituents of the bile precipitate, and subsequently treating the glycerine and lighter constituents of the bile for the removal of pathogenic bacteria."

"24. The process of preparing a remedial product which consists in mixing glycerine and bile in substantially equal proportions, permitting fermentation to take place without destroying the valuable cocci destroying constituents of the bile, and subsequently treating the mixture for removal of pathogenic bacterial growths."

The references are: Dustan, 64,649, May 14, 1867; Carpenter, 65,170, May 28, 1867; Rose, 137,624, April 8, 1873; Deikman, 307,748, November 11, 1884; Achard, 400,992, April 9, 1889; Wells, 1,385,195, July 19, 1921; Baron, 1,621,186, March 15, 1927;

Publications: The New Standard Formulary by Hiss & Ebert, 1920, page 199; Textbook of Bacteriology by Zinsser, pp. 118 and 133; United States Dispensatory (21st Ed.) pp. 525 and 1421, 1422.

It appears from the record that appellant's medicinal preparation, known as glyceride of bile, is prepared by mixing bile and glycerine in substantially equal proportions. The mixture is permitted to stand for three months, in order that the heavier deposits may be precipitated, thus rendering the bile easier to be filtered for the removal of pathogenic matter. It appears that the glycerine, in such proportion, acts as a preservative of the medicinal properties of the bile.

Appellant states in his specification that: "The bile and glycerine are mixed in substantially equal amounts; the glycerine preferably being added as a preservative for the bile to prevent deterioration thereof, while not interfering with the designated action thereof. An antiseptic could be used to preserve the bile, but would have an action in many cases detrimental to reconstruction of tissues, which must not be interfered with in the treatment of infections. The fresh bile and glycerine $C_3H_5(OH)_3$ (U. S. P.) are allowed to stand for three months, in order that precipitation of the heavier deposits may take place, rendering the bile easier for filtering. Such deposits might be removed otherwise than—precipitation, such as by centrifugal action, but it is preferred to permit the same to stand for such length of time to accomplish this result. The bile liquid is then filtered through unglazed porcelain filters, or asbestos filters, or any filters designed to achieve the result, that is, to remove live and dead bacteria; the dead bacterial cells being removed to obviate the creation of a vaccine or bacterin in the treatment of the patient, which might cause complicating symptoms; and the live bacterial cells being removed to prevent further infection of the tissues."

It further appears from appellant's specification that his product is used "for dissolving pus cells" and "relieving congestion," and that it is "particularly well adapted for use in dental work, for infection, and * * * may be used under caps, or as a dressing for sockets after extraction to prevent the formation of pus."

It appears from an affidavit of appellant that if the glycerine is used in a minor proportion the bile will decompose, and in a short time lose its identity; that if the glycerine is used in such proportion as to "appreciably" overbalance the bile constituent,

it not only preserves the medicinal properties of the bile, but also certain pathogenic matter contained in it; and that such pathogenic matter must be destroyed in order to produce a safe pharmaceutical preparation. It further appears from the affidavit of appellant, and other exhibits of record, that appellant's product is new, useful, and of considerable merit.

The patent to Dustan relates to a liniment for use on animals for the "cure" of sprains, spavins, etc. The liniment is composed of "Spirits of arnica, seven ounces; alcohol, fifteen ounces; beef gall, four ounces; camphor, two ounces; oil of origanum, two ounces."

The patent to Carpenter relates to a liniment for the "cure" of rheumatism and diseases of like character. Patentee's product is composed of "Ox gall, one gallon; kerosene oil, one-half gallon; alcohol, one gallon."

The patent to Rose relates to a liniment for the treatment of rheumatic diseases, neuralgia, and headache. The liniment is composed of "Eight ounces oil amber; four ounces tincture capsicum; eight ounces spirits turpentine; eight ounces laudanum; eight ounces beef-gall; eight ounces oil hemlock; eight ounces oil sassafras; four ounces tincture lobelia; four ounces oil lemon; three quarts alcohol, ninety per cent."

The patent to Deikman relates to a liniment to be used in the treatment of rheumatism. The patentee used a mixture of "alcohol, one quart; aqua ammonia, one pint; glycerine, one ounce; borax, one and a half ounce; chloroform, one ounce; ether, one and a half ounce; oil of sassafras, three ounces; beef's gall, eight ounces; soft water, one pint; sal-soda, one ounce; castile-soap, three pounds; oil of roses, one and a half ounce," and a small amount of alcohol.

The patent to Achard also relates to a liniment for the treatment of sore throat, rheumatism, sprains, bruises, etc. His liniment is composed of "one gallon alcohol, one pound chloroform, six ounces ether, six ounces laudanum, six ounces gum-camphor, six ounces tincture arnica, two ounces tincture cayenne, three large beef-galls, four ounces fresh butter."

The patent to Wells relates to a remedy for hemorrhoids. His product is composed of ox bile and denatured alcohol. In his specification, the patentee states:

"* * * I add denatured alcohol in a proportion to equal in volume the volume of bile, the alcohol acting first as a thinner, and also as a solvent for a portion of the bile. However, I find that in these proportions, the alcohol will not dissolve all of the bile. The liquid is thoroughly stirred, a considerable froth resulting, which soon evaporates and disappears after the stirring operation ceases. Thus, it is my theory that bile and alcohol are not immiscible and that to a considerable extent, the bile not only goes into a solution but also chemically reacts in and forms with the alcohol a homogenous liquid. However, the amount of bile used, compared to the amount of alcohol, is in excess of the capacity of the latter as a solvent, and this excess remains in suspension and settles to the bottom of the container after the latter stands for a short period. Of course, the bottle or container is quickly sealed after the mixture is formed to avoid evaporation.

"In use, the bile acts as an astringent, in addition to its healing properties, thereby not only removing irritation and inflammation but also contracting the parts subjected to its action which in the case of hemorrhoids, serves to quickly remove the pain and obstruction attending stools."

The patent to Baron relates to a bowel evacuant. His product is composed, as stated by the patentee, of "glycerine, ox gall, and in its preferred form, a thickening material or agent, such as gelatine, agar-agar or similar substances, together with a liquid adapted to slightly thin the mixture to a semi-liquid or syrupy state." The patentee further stated that in "the preferred form of my invention the glycerine is *present in a predominating quantity* and the thickening agent, ox gall and thinning agent in substantially equal proportions"; that the glycerine might vary "between 50% and 94%; the ox gall between 15% and 2%; the thickening agent between 10% and 2%; and the thinning agent between 25% and 2%." (Italics ours.)

The disclosures contained in the New Standard Formulary by Hiss and Ebert, page 199, and the Textbook of Bacteriology by Zinsser, pp. 118 and 133, are set forth in the decision of the Board of Appeals, wherein it was stated that:

"The Examiner rejected the claims as lacking invention over the Formulary references in view of the patents cited. Page 199 of the Standard Formulary discloses

a glycerite of ox-gall having the following composition:

Inspissated ox-gall............................av. oz. 3
Glycerin ..........................................fl. oz. 2
Salicylic acid.....................................gr. 15
Water to make..................................fl. oz. 6

"The ox-gall in this preparation contains bile. Appellant's specification states that he obtains his bile preferably from some animal as the steer.

"The Baron patent discloses a medical preparation consisting of glycerine, ox-gall, water and gelatine. The patent states that the gelatine is used as a thickening agent and that the glycerine may vary between 50% and 94%. The remaining patents show that it is common to use bile in various medical preparations that may be used as pus solvents.

"The Examiner finally rejected the claims as lacking invention over the Formula in the Textbook of Bacteriology, Page 133, reading as follows:

Ox bile...........................................900 cc.
Glycerine .......................................100 cc.
Peptone ........................................ 20 gms.

"The Examiner held that the omission of the peptone in this formula and variations in the proportions of the ingredients would not involve invention. The Examiner notes that the steps of allowing the mixture to stand and then filtering it to remove the precipitate are old and well known steps in the art, as disclosed on page 118 of the Textbook of Bacteriology.

"The brief of appellant and the contentions made therein have been carefully considered without finding reversible error in the Examiner's action. Concerning the step of "permitting fermentation" contained in claims 23 and 24, the Examiner's holding that if fermentation takes place in applicant's composition it would also take place in the compositions of the references, appears to be sound."

The publication, United States Dispensatory (21st Ed.) pp. 325 and 1421, 1422, was not discussed in the decisions of the tribunals of the Patent Office, and, in our opinion, is not of sufficient importance to warrant a statement regarding the disclosures contained therein.

It is argued by counsel for appellant that the references do not disclose a mixture consisting of glycerine and bile, only; that they do not suggest the mixing of such substances in substantially equal proportions, or the removal of pathogenic matter from the bile; that appellant's mixture of glycerine and bile in such proportions is critical; and that the product, and the process of making it, is not only new and useful, but involves invention.

It may be observed that claims 21, 23, and 26 do not call for a mixture of glycerine and bile in substantially equal proportions, and, therefore, do not define appellant's real invention.

We are of opinion, as held by the tribunals of the Patent Office, that those claims, in view of the references of record, do not involve invention, and are not patentable.

Each of the other appealed claims, however, calls for the use of glycerine and bile in substantially equal proportions, and the removal of pathogenic matter from the bile. Our understanding of the language "substantially equal proportions" is that although the proportions of the ingredients may vary slightly, neither will appreciably predominate.

We think it is evident that the references of record neither singly, nor in combination, anticipate appellant's process or his resultant product. Appellant has produced a new medicinal preparation, having new and valuable characteristics. Accordingly, we are constrained to disagree with the holding of the tribunals of the Patent Office that, in view of the references of record, appellant's product and process would be obvious to one skilled in the art.

It is argued by the solicitor for the Patent Office that the Board of Appeals held that, in view of the disclosure in the Textbook of Bacteriology by Zinsser of a *bile medium* for *blood culture,* composed of bile, 900 cc., glycerine, 100 cc., and peptone, 20 gms., appellant had done nothing more than to omit peptone, and change the proportions of bile and glycerine, and that such modifications did not involve invention.

The answer to that proposition is that the "bile medium," referred to, is used as a *blood culture;* whereas, appellant's product is a new and useful *remedial medicinal preparation,* differing in kind and character from the products disclosed or suggested by the references, and its production, obviously, required something more than the omission of peptone and its function, and the mere variation of the proportions of the bile and glycerine ingredients.

The use of appellant's glyceride of bile in a dentifrice is discussed by us in Re

Faunce, 75 F.(2d) 211, 22 C. C. P. A. (Patents) ——, decided concurrently herewith.

For the reasons stated, the decision of the Board of Appeals is affirmed as to claims 21, 23, and 26, and reversed as to claims 10, 18, 24, 25, and 27.

Modified.

## In re FAUNCE.

### Patent Appeal No. 3415.

Court of Customs and Patent Appeals.
Feb. 4, 1935.

Royal R. Rommel, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.